## CONTROL BY A MUNICIPALITY OF RATES FOR ELECTRICITY.

### Common Pleas Court of Van Wert County.

THE CITY OF VAN WERT v. THE VAN WERT PUBLIC SERVICE CO.

Decided, August, 1910.

*Electrical Franchise—Control of Rates Thereunder by the Municipality —Terms of Franchise May be Enforced by Injunction—Unlawful Devices for Increasing Rates—Charges for "Readiness to Serve" —Schedule of Discounts.*

1. The acceptance from a municipality of an electric franchise carries with it an obligation to furnish electric light and power agreeably to the provisions of the ordinance and the law, and specific performance of the obligation thus incurred may be enforced by the municipality through the medium of a mandatory injunction, or at least an injunction may be obtained against violation of the obligations thus assumed.
2. Furnishing electricity and payment therefor are parts of the same transaction, and complaint will not lie against an ordinance on the ground that both subjects are covered by its title.
3. The power of a municipality to fix a maximum rate for electricity includes the power to fix a maximum rate for varying quantities used, and this power is not improperly exercised when it is so exercised as to permit of a reasonable profit to the lighting company.
4. Inasmuch as a reasonable return on the whole investment is presumed to have been contemplated by council when it fixed the rates, an additional charge of seventy-five cents per month for "readiness to serve," or any other device for increasing the total sum collected from the consumer, can not be maintained.

*H. G. Richie* and *Balyeat & Walters,* for the motion.
*M. H. Osborn,* City Solicitor, and *W. H. Dailey,* contra.

MATHERS, J.

Ruling on motion to dissolve injunction.

On June 10, 1910, upon the petition and motion of the plaintiff, and for good cause shown, a temporary injunction was allowed in this action restraining the defendant from charging

the plaintiff and other private consumers of the city of Van
Wert, Ohio, for electricity for commercial use a price in excess
of that fixed by ordinance No. 283, adopted by the council of said
city May 5, 1910. On July 13th a motion to dissolve this in-
junction was filed, and on August 3d it was argued and sub-
mitted. The motion is based on the reasons set forth in defend-
ant's answer, which was filed on the same date as the motion.
At the hearing, it was stipulated that the sixth ground of the
motion, being the sixth defense, should not be considered by the
court. That defense is that the rates prescribed by the ordi-
nance are unreasonable and confiscatory and for that reason
the ordinance is void.

The first ground of the motion, being the first defense of the
answer, is a general denial of everything in the petition except
the averments of incorporation and of succession, by the de-
fendant, to the rights of the original grantee of the lighting
franchise in question. Nothing was offered in argument as to
this ground, which, manifestly, would require proof to reach a
conclusion in view of the issues of fact joined. The only thing
in the nature of proof offered was an admission by defendant
with respect to a "readiness to serve charge," and to it reference
will be made later on.

The second ground of the motion, being the second defense of
the answer, raises the question of the legal capacity of the plaint-
iff to sue in this behalf, on the theory that it is not a consumer
of current under the ordinance, and hence has no interest in the
result of the controversy. The action is brought by the city, by
its city solicitor, under favor of Section 4312, General Code.
While it was urged that the words "obligation or contract made
on behalf of the corporation," which are used in that section,
contemplate only public contracts or obligations wherein the
municipality, as a legal entity, is the beneficiary or the obligee,
yet an action brought in the same manner and for similar ends
seems to have the sanction of the Supreme Court in 65 O. S., 186,
*Logan Natural Gas & Fuel Co.* v. *City of Chillicothe,* where the
city solicitor brought the action in the name of the city. Counsel
for defendant asked to have pointed out the particular part of

the section mentioned to which this action might be appropriately assigned.  Surely, when the council granted the franchise to the defendant's predecessor, and its assigns, an obligation devolved upon it and its assigns, exercising the franchise, to furnish electric light and power agreeably to the provisions of the ordinance and of the law.  Not only were a right and an easement thereby granted, but a public duty imposed.  If it is being violated, a specific performance may be obtained through the medium of a mandatory injunction (*Gaslight Co.* v. *Zanesville,* 47 O. S., 50), or, at least, an injunction obtained against such violation.

The third ground of the motion, being the third defense of the answer, is that the ordinance No. 283 is invalid because the title is in conflict with the body of the ordinance, contrary to the provision of the statute (Section 4226, General Code), that no ordinance shall contain more than one subject, which shall be clearly expressed in its title.  The court can not find any conflict between the body of the ordinance and its title.  The ordinance purports to deal with one subject, viz.: the regulation of the price to be charged by the defendant for furnishing electricity, and the payment therefor.  That this is a single commercial transaction, can hardly be gainsaid.  The title expressly states that this is the purpose of the ordinance.

The fourth ground of the motion, which is the fourth defense of the answer, is an averment that defendant is not charging any private consumer of electrical current used for illuminating purposes a price in excess of eleven cents per kilowatt, the maximum fixed by the ordinance.  This averment raises an issue of fact.  In support of defendant's contention in this behalf, it offered a schedule of prices which it is charging.  By this schedule it appears the maximum charge is eleven cents per kilowatt, and that certain discounts are allowed consumers, based upon a variation in quantity of current consumed, which discounts are different and higher, that is to say, require a larger payment of the consumer than those fixed by the ordinance.  In addition to this, the defendant charges, as appears by this schedule and admitted by counsel, seventy-five cents per month each consumer for a "readiness to serve" charge.  This ground will be considered in connection with the next one, the fifth.

The fifth ground of the motion, which is the fifth defense of the answer, is that, admitting the power of the council to "fix the maximum rate," it has no power to fix the rate at which the defendant shall discount bills for current furnished. If this was the purpose of the provision complained of perhaps the contention would be correct; but, while the form of the regulation, and its language as well, is in the manner of a discount, the effect of the provision is a regulation of rates and a fixing of the maximum charge permissible for varying quantities. The defendant earnestly contends that when the council has fixed one maximum charge, its power to regulate is fully exercised and is thereafter exhausted, and relies on the language of the opinion in *Gas & Fuel Co.* v. *City of Chillicothe,* 65 O. S., 186, 205, to sustain its contention. The purpose of the judge delivering the opinion obviously was to explain the end to be secured by the statutes authorizing municipal regulation, and to show that the legislative intent was not to authorize the fixing of a *minimum* price, though such price was specifically mentioned in the statute, but to protect the public "from the hardships of excessive charge." To accomplish this, he adds, "therefore, the council is authorized to fix the limit above which the gas company can not go." The learned judge certainly can not have intended to substitute the term "fix" for the term "regulate," which is the word used in the statute, in the sense of limiting the power implied by the latter to but one exercise of it to various differing conditions. In "fixing" the so-called discounts, the council was still determining the maximum beyond which the company could not go, and fixing them for the several classes of consumers into which any consumer might bring himself accordingly as his necessities might determine.

In all commercial transactions, it is universally recognized that the buyer of large quantities gets a lower price, and it was a recognition of this business principle or practice doubtless that prompted the council to fix a lower rate for a larger quantum of current than for a smaller. The only exceptions to this practice that now occur to the court's mind are the government's uniform charge for postage stamps, and the newly-adopted policy of gov-

ernmental regulation of railroad rates.   But these are easily dif-
ferentiated from ordinary commercial transactions, the former
because the charge is more in the nature of a tax than a compen-
sation, not only because of the disparity between the amount of
the charge and the service rendered, but because the facilities
for the interchange of intelligence are properly considered to be
peculiarly within the province and fostering care of a govern-
ment such as ours; and the latter, because they are in their nature
highways, in the common use of which, on equal terms, every-
body is interested.   So long as the regulation here complained of
is not confiscatory, but permits a reasonable profit to the defend-
ant, no legal objection can be urged against what has become cus-
tomary in arranging a schedule of charges for electric current.
The defendant itself has such a schedule of so-called "dis-
counts," the effect of which is to make a lower rate to the con-
sumer of the larger quantity and there are four different classes
of such "discounts."   "Discount" is an unfortunate word to
have used and does not exactly express what the council intended.

The "readiness to serve" charge, which admittedly is made
and is a monthly charge of seventy-five cents to all consumers, is
in excess of the charges permitted by the ordinance, and hence
is in violation of its prohibition to charge any other or further
sums than permitted by the ordinance.   It is contended by the
defendant that this is not a charge for electricity and that it is
not charging to exceed eleven cents per kilowatt in that behalf.
But this contention is untenable when measured by the effect on
the consumer of the charge made.   If it is the duty of defend-
ant to furnish electricity to the consumer at not to exceed the
maximum price fixed by the ordinance, the consumer is en-
titled to have the electricity furnished to him at such price, and
any charge or device that will compel him to pay more than such
price in order to use the current, be it called by whatsoever
name, practically increases the amount he has to pay for the
service, and it is to regulate such charge that is the purpose of
the ordinance and that it may be regulated the intent of the
Legislature.

Seventy-five cents per month is the interest on $150.   While,
in some cases, it is conceivable that an expense of $150 might be

required to install the wires and appurtenances so as to put the defendant in position to furnish current to some particular consumer, yet the cost can not be uniform in all cases, though the charge is, and hence there is bound to be discrimination somewhere. "* * * so long as such * * * company continues to exercise any of its franchises within the * * * municipality, it may be compelled to exercise its franchise therein fairly and without discrimination." (*Gas Co.* v. *City*, 81 O. S., 33, 34.)

Again, the initial expenditure of a much larger sum is necessary to install the plant, or to renew it or parts of it from time to time, in order to get ready to serve at the outset, or continue in a state of readiness afterward, and it would be a charge of the same nature to *pro rate* the interest on this installation or renewal expense among the consumers, as it is to make this "readiness to serve" charge. A fair return on the whole investment, keeping in mind what the defendant must do in order to furnish the current to the consumer, is presumed to have been contemplated by the council when it "fixed" the rates. So it will appear that, if for no other reason than this overcharge, the injunction should not be dissolved.

The sixth ground of the motion, being the sixth defense of the answer, is the claim that the so-called "discounts" are confiscatory because they would require the defendant to furnish electricity at a loss. As was said at the outset, no argument was adduced nor proof offered in this behalf and the court has not considered it. If the claim is true, the ordinance—at least to this extent—is void.

Without committing itself, in advance, to any figure as a fair return on the investment the court adverts to the case of *Wilcox et al* v. *Consolidated Gas Co. of New York*, 212 U. S., 19-55 (53 L. Ed., U. S., 382), as perhaps the latest statement of principles to govern such an inquiry.

The motion to dissolve is overruled. Exception.